## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| MOHAMMAD SHARIFI, Z-709, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIV. A. NO. 21-00552-JB-MU |
| ) | |
| JEFFERSON DUNN, *et al.*, ) | |
| ) | |
| Defendants. ) | |

### REPORT AND RECOMMENDATION

Plaintiff Mohammad Sharifi, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). This matter is before the Court on Defendants' motion for summary judgment.[1] (Doc. 63). For the reasons discussed herein, it is recommended that this motion be **GRANTED, in part**, and **DENIED, in part**, as laid out below.

### I. Background and Factual Allegations

Plaintiff Mohammad Sharifi is suing Warden Terry Raybon and Alabama Department of Corrections Commissioner John Hamm for stealing his property, torturing him by not allowing him to make international calls, and withholding mail addressed to him by Iranian officials while incarcerated at Holman Correctional Facility ("Holman"). (Doc. 6).

Sharifi alleges that on May 14, 2021, Warden Raybon and other nondefendant officers moved 171 death row inmates to new dorms. In so doing, Sharifi contends that

---

[1] The Court converted Defendants' Answer and Special Report to a motion for summary judgment. (Docs. 61, 62).

his personal property was stolen, including $35,000 trial documents, expensive law books, $250 24-inch television, $400 tobacco purchased from the prison canteen, and $50 sweatsuits. (*Id*. at 8). Sharifi alleges that Warden Raybon conducted shakedowns on October 12 and December 14, 2021, which resulted in the confiscation of a cell phone from Sharifi. (*Id*. at 9). Sharifi alleges that other correctional officers have conducted shakedowns, some of which included the use of pepper spray against him and the confiscation of cellphones from him. (*Id*. at 8-9).

Additionally, Sharifi alleges that Warden Raybon is censoring his international telephone calls and mail from Iranian officials and family members in Tehran. (*Id*. at 9). Specifically, Sharifi alleges he cannot use the inmate telephone system to make international calls to Iran given the nine-and-a-half-hour time difference between Alabama and Tehran, that the inmate telephone system does not make international calls, and that Warden Raybon will not allow him to use the landline telephone system available to Holman correctional staff to make international calls, though he has offered to pay for the calls himself. (*Id*. at 10).

Sharifi seeks monetary relief and injunctive relief - to be able to make international phone calls and receive Farsi mail, to have his "Z-1 single walk" be changed to a "Z-2 group walk," as well as criminal charges to be brought against Warden Raybon. (*Id*. at 7).

## II. Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the

parties remains, so long as there is 'no genuine issue of material fact.'") (emphasis omitted).

Defendants, as the parties seeking summary judgment, bear "the initial responsibility of informing the district court of the basis for [their] motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clarke v. Coats Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If Plaintiff, the non-moving party, fails to make "a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," Defendants are entitled to summary judgment. *Celotex*, 477 U.S. at 323. In assessing whether Plaintiff has met his burden, "the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. . . . Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-99 (11th Cir. 1992). The requirement to view the facts in the non-moving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to material facts." *Garczynski*, 573 F.3d at 1165 (citation and internal quotation marks omitted). "A 'mere scintilla' of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment." *Id*. In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell

two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Discussion and Analysis

**A. Immunity Defenses.**

To the extent Sharifi attempts to sue Defendants in their official capacities (as the Commissioner of the Alabama Department of Corrections and as Warden of Holman) and seeks any type of monetary award, Defendants are entitled to absolute immunity from suit, as official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

> A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities.

*Id*., quoting in large measure *Lancaster v. Monroe Cnty*, 116 F.3d 1419, 1429 (11th Cir. 1997). Accordingly, Defendants, both employed by the State of Alabama, are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429.

Defendants further contend, to the extent they are sued in their individual capacities, that they are entitled to qualified immunity, because they were acting within their discretionary authority at all times, and Plaintiff cannot show a constitutional violation.

4

(Doc. 61 at 4-7). "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Marbury v. Warden,* 936 F.3d 1227, 1232 (11th Cir. 2019) (citation omitted).

There is no dispute, here, that Defendants were acting within their discretionary authority at all times. So, the burden shifts to Sharifi to show that Defendants violated a constitutional right and that the right was clearly established at the time of the alleged violation. *Id*. Thus, the Court turns to examine whether a constitutional violation has been established.

## B. No Liability Under *Respondeat Superior.*

To the extent Sharifi alleges that Commissioner Hamm is liable to him in his supervisory position for the actions of his subordinates based on the theory of *respondeat superior*, the claim fails.

"It is well established that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1047 (11th Cir. 2014) (citations omitted). "[S]upervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). "The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he

fails to do so.'" *Id.* (citations omitted). "Alternatively, the causal connection may be established when a supervisor's 'custom or policy . . . result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (citations and internal quotation marks omitted). In such instances, Plaintiff must show that the policy or custom was "the 'moving force [behind] the constitutional violation.'" *Pinkney v. Davis*, 952 F. Supp. 1561, 1569 (M.D. Ala. 1997) (citations omitted). "[I]t is clear that not only must there be some degree of 'fault' on the part of [defendant] in establishing the policy or tolerating the custom, but there must be a causal link between the custom or policy and the constitutional deprivation." *Id.* (citations omitted).

As to Commissioner Hamm, Sharifi has alleged only that he employed or hired Warden Raybon and that Warden Raybon is responsible for the inmate telephone system unavailability, rejection of his Farsi language mail, cruel and inhumane treatment, and shakedowns (that constitute theft). (Doc. 6 at 11-12). Such an allegation fails to show any personal involvement by Commissioner Hamm in decisions related to Sharifi's claims nor does it show a causal connection between Commissioner Hamm and the alleged actions to establish liability. Indeed, the record is void of evidence that Commissioner Hamm directed Warden Raybon (or any officer) to act in any particular way or that he implemented any rules or policies that were the cause of Sharifi's alleged harm. The record is further void of argument or evidence of a widespread history of the alleged abuses as to put Commissioner Hamm on notice of a constitutional violation. Thus, the single act of hiring Warden Raybon is insufficient to establish knowledge of a

constitutional violation or to connect Commissioner Hamm to any alleged violation. For this reason, Sharifi has failed to state a claim against Commissioner Hamm for any constitutional violation, and summary judgment is due to be granted in favor of Commissioner Hamm on all claims asserted against him.

**C.  Loss of Property Claims.**

The Fourteenth Amendment protects against deprivations of life, liberty, or property by a State without due process of law.  *Parratt v. Taylor*, 451 U.S. 527, 537 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330 (1986). Sharifi's allegations that Warden Raybon stole his property, including his legal papers, law books, television, tobacco, and sweatsuits, thus, implicates the Fourteenth Amendment.  *Holt v. Givens,* 757 F. App'x 915, 921 (11th Cir. 2018).  However, "[n]othing in [the Fourteenth Amendment] protects against all deprivations of life, liberty, or property by the State.  [It] protects only against deprivations without due process of law."  *Parratt*, 451 U.S. at 537 (quotation marks omitted).

A deprivation of property that is the result of a state employee's lack of due care or negligence does not violate the Fourteenth Amendment.  *Daniels v. Williams*, 474 U.S. at 333.  And "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available."  *Hudson v. Palmer*, 468 U.S. 517, 532 (1984).

Sharifi's allegations suggest an unauthorized intentional taking of property by a state employee. However, courts have repeatedly recognized that Alabama law provides adequate post-deprivation remedies for such losses of property caused by state officials

through the Board of Adjustment and in an ordinary state-court tort action. *See Smith v. Governor for Alabama,* 562 F. App'x 806, 817-18 (11th Cir. 2014) (holding that the Alabama Board of Adjustments, Ala. Code § 41-9-60, *et seq.*, provides a meaningful post-deprivation remedy through which a state inmate may seek relief for the loss or denial of property even though a recovery may not be the equivalent of a § 1983 action). Notably, the post-deprivation remedy does not need to be available to Plaintiff at the present time to determine whether the deprivation was with or without due process - it is only required that an adequate post-deprivation remedy be available when the deprivation occurred. *Parratt*, 451 U.S. at 543-44. Consequently, because an adequate post-deprivation remedy was available to Sharifi, the deprivation of his property was not without due process and there has been no constitutional violation.

**D.  Eighth Amendment Claims.**

The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "[T]he unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citations and internal quotation marks omitted). "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citations omitted). For a prison condition to violate the Eighth Amendment, the prisoner must be deprived of "the minimal civilized measure of life's necessities." *Id*. at 347.

Reading Sharifi's complaint broadly, he puts forth general and conclusory allegations that the use of pepper spray during shakedowns is "extremely cruel", (Doc. 6

at 9), that having the group walk he participated in at Donaldson Correctional Facility taken away when he arrived at Holman for no reason was "torture" (Doc. 65 at 4), and that having his Farsi language mail rejected and international telephone calls denied is "TORTURE cruel Unhumane Pain & Suffering for DECADES in violation of the 8th Amendment." (Doc. 6 at 12). These allegations raise two types of potential Eighth Amendment claims: excessive force and conditions of confinement. *DeJesus v. Lewis*, 14 F.4th 1182, 1195 (11th Cir. 2021) ("There are distinct types of claims that can be brought by prisoners alleging cruel and unusual punishment under the Eighth Amendment. Prisoners can challenge their conditions of confinement, the excessive use of force against them, and the deliberate indifference to their serious medical needs."). To establish an Eighth Amendment claim, Sharifi must satisfy both an objective and subjective component.

As to the conditions of his confinement, Sharifi must show that the alleged harm or condition was, objectively, sufficiently serious to violate the Eighth Amendment, meaning it is extreme and poses an unreasonable risk of serious damage to his future health or safety. *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). Subjectively, Sharifi must show that the defendant acted with deliberate indifference, meaning that the defendant knew Sharifi was at a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1583 (11th Cir. 1995). Sharifi has failed to allege a plausible Eighth Amendment claim. Accepting Sharifi's allegations as true, the denial of telephone calls, mail, and group walks hardly rises to the constitutional level. It simply cannot be argued that these are categorized as necessities of life, the denial of which was sufficiently serious. It further

9

cannot be argued that these conditions pose an unreasonable risk of serious harm to Sharifi's health or safety. To be sure, the cruel and unusual punishment standard of the Eighth Amendment requires "that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Constitution, however, "does not mandate comfortable prisons." *Rhodes*, 425 U.S. at 349.

As to the use of pepper spray against him during shakedowns, "'the core judicial inquiry' requires [the Court] to consider 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Sconiers v. Lockhart*, 946 F.3d 1256, 1265 (11th Cir. 2020) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)). This requires Sharifi to show, subjectively, that the defendant "acted with a sufficiently culpable state of mind" to cause him harm, and that the conduct was "objectively harmful enough to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). First, Sharifi has not alleged that Warden Raybon administered pepper spray during a shakedown or anytime. For this reason, as discussed in section III., B., Warden Raybon may not be held liable for the actions of his subordinates without a causal connection being drawn between him and the alleged conduct, which Sharifi has failed to do. Sharifi also has not shown a history of widespread abuse that puts Warden Raybon on notice of a need to correct the use of pepper spray during shakedowns. Indeed, Sharifi chronologically describes 37 shakedowns from May 7, 2020 through May 23, 2023, and only three of them reflect the use of pepper spray. (Doc. 65 at 8-13, see dates June 24, 2021, September 13, 2021, and March 25, 2022). Sharifi has not described a custom or policy instituted by Warden Raybon that instructs using pepper spray during shakedowns. Nor has Sharifi shown that Warden Raybon directed subordinate officers to

use pepper spray routinely during shakedowns. Neither does the record reflect that Warden Raybon knew subordinate officers would act unlawfully and that he failed to stop them. Accordingly, Sharifi has failed to link Warden Raybon to the use of pepper spray during shakedowns.

For these reasons, Sharifi has failed to establish a plausible Eighth Amendment claim against Defendant Warden Raybon.

**E.  International Telephone Calls and Mail Claims.**

It is well established that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution," nor do they block the constitutional rights of free citizens to reach out to the prisoners inside. *Turner v. Safley*, 482 U.S. 78, 84, 94-99 (1987). "[T]hese rights[, however,] must be exercised with due regard for the inordinately difficult undertaking that is modern prison administration." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). Accordingly, prison inmates retain those First Amendment rights that are not "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). This includes the right to communicate with persons outside the prison walls, in their native language, *Kikumura v. Turner*, 28 F.3d 592, 596 (7th Cir. 1994), subject to regulation that protects legitimate governmental interests. *Procunier v. Martinez*, 416 U.S. 396, 412–13 (1974).

As previously discussed, Sharifi alleges that he has been denied communication with nonprisoners both by telephone and mail, claiming specifically, "Warden Raybon <u>rejected my lawful</u> Internal phone calls + Also + rejected All my Farsi Language Letter from Iranian officials & my mother & Son in Tehran Iran." (Doc. 6 at 9). Though Sharifi's

11

complaint is far from clear, he expounds on his allegations by explaining that the ADOC inmate telephone system operates from 9:00 a.m. to 10:00 p.m., "Alabama time", which is a 9.5-hour time difference from Iran – meaning, effectually, he cannot make calls to Iranian officials. (*Id*. at 10). As a solution, Sharifi has asked to use the landline telephone system available to Holman correctional staff and personally pay for the phone calls, but Warden Raybon has denied such requests. (*Id*.). Sharifi further claims that his Farsi language mail is rejected by the prison.

To succeed on his claim, Sharifi must show that there is no valid, rational connection between the prison regulation and the legitimate governmental interest put forward by the defendant. *See Turner*, 482 U.S. at 89 (A ban on an inmate's ability to communicate with others "is valid if it is reasonably related to legitimate penological interests."). "[Courts] do not inquire whether the prison could make an individualized exception for the complaining inmate—[they] assess 'only the relationship between the asserted penological interests and the prison regulation.'" *Rodriguez v. Burnside*, 38 F.4th 1324, 1330 (11th Cir. 2022), *cert. denied,* 143 S. Ct. 1780 (2023) (quoting *Shaw v. Murphy*, 532 U.S. 223, 230 (2001). That determination depends on the evaluation of four factors set out by the Supreme Court in *Turner*: (1) whether the regulation bears a rational connection to the legitimate governmental interest put forth to justify it; (2) whether there are available other alternative means of exercising the asserted rights; (3) the impact of accommodating the asserted right on the interest of inmates, prison personnel, and prison resources generally; and (4) whether there is an absence of ready alternatives. 482 U.S. at 89-90.

Based on the record currently before the Court, however, the undersigned is unable to evaluate these factors because Warden Raybon's motion is void of necessary facts, explanations, or evidence that permits the Court to determine whether restrictions to Sharifi's Iranian telephone calls and mail violate his constitutional rights. Warden Raybon, as the movant for summary judgment, bears the burden of showing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. Here, Warden Raybon simply denies Sharifi's allegations, generally affirming that international phone calls can be made from the ADOC inmate telephone system at the inmate's expense and that Sharifi's inability to make international phone calls is due solely to his loss of telephone privileges following received disciplinary charges.[2] (Docs. 61-1; 61-2). Sharifi, in response to Warden Raybon's motion, categorically declares that prisoners in Alabama "with or without disciplinary infractions" cannot make international phone calls through the Alabama inmate phone system. (Doc. 65 at 6). Furthermore, Warden Raybon affirms that he does not "recall Inmate Sharifi receiving mail from Iranian Officials, if so, the mail would not have been rejected solely on the fact of being from Iranian Officials." (Doc. 61-1). In his sworn opposition, however, Sharifi states:

> Federal Defenders Atty John Palombi . . . [tried] several times to resolve rejection of Farsi language mails sent me legal envelops; I gave to Holman Mail Clerk to forward my Farsi language mails as Holman "security violation" mail clerk constantly rejected. Hence Holman Mail Clerk forwarded my Farsi Language mail to Federal Defenders Atty John Palombi with my stamps to forward to my atty. Otherwise Destroyed ALL rejected mails without my envelops my stamps. In other words – for Farsi language mails to receive –

---

[2] The submitted disciplinary reports reflect that Sharifi has received at least fifteen (15) disciplinary charges since December 23, 2020, which have resulted in the loss of his telephone privileges. The disciplinary records show that Sharifi was free to use the inmate telephone system at Holman from February 6 to September 3, 2021, from February 25 to May 11, 2022, from June 10 to July 25, 2022, and from March 22 to April 21, 2023. (Doc. 61 at 3-4; Doc. 61-2). At all other times since December 23, 2020, Sharifi was restricted from using the telephone system because of committed disciplinary violations.

> I must use my stamps & my envelop to forward to my atty to avoid being destroyed my rejected mails at Holman Mail Office. Palombi several times mailed to me my rejected Farsi mail thru LEGAL-mail.

(Doc. 65 at 5). Though Sharifi's pleadings are difficult to discern, it seems Sharifi claims he is unable to send or receive Farsi language mail. The constitutionality of Sharifi's claim is currently indeterminable, as Warden Raybon has not provided any insight as to the regulations or practices of the handling of foreign language mail at Holman, much less as to the specifics of Sharifi's claim. Indeed, Warden Raybon fails to address the heart of Sharifi's claim all – that because of the hours of operation of the inmate phone system, coupled with the international time differences between Alabama and Iran, he is (for all practical purposes) barred from communicating with Iranian officials and (arguably) his mother and son and, furthermore, has no means to communicate through Farsi language mail.

A review of factually similar cases reflects that courts find no constitutional violation to a prisoner's First Amendment rights as long as there remains some access to an inmate's ability to communicate with friends and family generally:

In *Ramos*, prison officials violated the First Amendment when they refused to deliver incoming personal mail to inmate simply because it was not written in English. *Ramos v. Lamm*, 639 F.2d 559, 581 (10th Cir. 1980).

In *Thongvanh*, a prison policy prohibiting inmate from sending and receiving mail in Lao violated the First Amendment, where prison officials had access to cost-free translation service. *Thongvanh v. Thalacker*, 17 F.3d 256 (8th Cir. 1994).

In *Ortiz*, the court found that the prison had a legitimate interest in monitoring mail for security reasons and upheld the prison's prohibition on letters to inmate's family members being written in Spanish. It further found that Ortiz had other avenues by which he could communicate with his family members, namely he was allowed to call them on the phone and to receive them in person. When Ortiz was unable to identify a cost-free way for the prison to accommodate him, these alternate forms of communication were deemed sufficient alternatives to letter writing. *Ortiz v. Fort Dodge Corr. Facility*, 368 F.3d 1024 (8th Cir. 2004).

In *Yang*, the plaintiff alleged that prison officials violated his constitutional rights when they censored his Chinese-language mail and denied him the ability to place telephone calls to China. The officials argued the inability to monitor an inmate's communications with people outside the facility in an unfamiliar language made them vulnerable to escape, smuggling of contraband, and other planning of criminal activity. No constitutional violation was found where the court determined the plaintiff had an alternate means of communicating with outsiders, as he retained the ability to make calls and send letters in English. The court discussed that the plaintiff's pro se pleadings demonstrated he could communicate adequately in English, that Yang testified he believed there was a translation service in the city where his family resides, and Yang failed to show an alternative that would have eased the restriction without imposing financial burdens on the State. *Yang v. Missouri Dep't Corrs.*, 833 F.3d 890, 893 (8th Cir. 2016).

In *Marcum*, the district court accepted plaintiff's allegation "that the prison mail room prohibits incoming prisoner mail from Iran because Iran is considered a terrorist threat" and found that such justification constituted a valid penological interest in promoting prison safety such that the restriction was constitutional. *Marcum v. Director's Review Committee*, 2009 WL 3386536, *1 (S.D. Tex. Oct. 20, 2009).

Presently, there is a conflict between the parties' version of facts that creates a credibility issue, as Sharifi claims he is being denied access to send or receive Farsi language mail or call Iran, and Warden Raybon denies that Sharifi's Farsi mail is censored and insists that Sharifi is only unable to call Iran because of temporary punitive phone restrictions. At this juncture, the Court cannot disregard Sharifi's sworn statements, as "self-serving statements based on personal knowledge or observation can defeat summary judgment." *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018). This is true even if the Court doubts the veracity of certain evidence, as the Court cannot make credibility determinations at the summary judgment stage, for this is the work of jurors. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Consequently, viewing the evidence in the record and drawing reasonable inferences from the evidence in the light most favorable to the non-moving party as the Court must, *Sconiers*, 946 F.3d at 1260,

Defendant Warden Raybon's motion for summary judgment is due to be denied without prejudice.

Warden Raybon is granted leave until October 9, 2023 to refile a motion for summary judgment as to the First Amendment claims of censorship of Sharifi's calls to Iran and outgoing and incoming Farsi language mail. If no amended motion for summary judgment is filed by Warden Raybon on or before October 16, 2023, a scheduling order to this claim will issue.

### IV. Conclusion.

Based on the above reasons, it is **RECOMMENDED** that:

1. Summary Judgment be **GRANTED** in favor of Defendant Commissioner John Hamm on all claims asserted against him and that he be **DISMISSED** from this action entirely;

2. Summary Judgment be **GRANTED** in favor of Defendant Warden Terry Raybon as to the Fourteenth Amendment loss of property claims and the Eighth Amendment use of pepper spray claims asserted against him and that these claims be **DISMISSED**;

3. Summary Judgment be **DENIED** as to the First Amendment claims against Defendant Warden Terry Raybon for denial of international telephone calls to Iran and denial of outgoing and incoming Farsi language mail and that these claims be **DISMISSED WITHOUT PREJUDICE** with leave to file an amended motion for summary judgment by **October 15, 2023**;

4. If Defendant Warden Terry Raybon fails to file an amended motion for summary by October 15, 2023, **a scheduling order will issue** on the First Amendment claim against Defendant Warden Terry Raybon.

### **NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);

S.D.ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this **7th** day of **September, 2023**.

s/P. Bradley Murray
UNITED STATES MAGISTRATE JUDGE