# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | |
|---|---|
| MOHAMMAD SHARIFI, Z-709, | ) |
| Plaintiff, | ) |
| vs. | ) CIV. A. NO. 21-00552-JB-MU |
| JEFFERSON DUNN, *et al.*, | ) |
| Defendants. | ) |

## **REPORT AND RECOMMENDATION**

Plaintiff Mohammad Sharifi, an Alabama prison inmate proceeding without a lawyer, filed a complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). This matter is before the Court on Defendant Warden Terry Raybon's amended motion for summary judgment. (Doc. 75). For the reasons discussed below, the undersigned recommends this motion be **GRANTED**.

### I.     Background and Factual Allegations

The sole claim remaining in this action is Plaintiff Mohammad Sharifi's allegation that Warden Terry Raybon violated his First Amendment rights by denying him the ability to communicate with his family and government officials in Iran by telephone and mail. (Doc. 6). According to Sharifi, he cannot make international calls to Iran because the inmate telephone system does not make international calls, because there is a nine-and-a-half-hour time difference between Alabama and Tehran, and because Warden Raybon will not allow him to use an alternate telephone, like the landline telephone system available to Holman correctional staff, to make international calls, though he has offered to pay for

the calls himself. (*Id.*). Sharifi further claims that his Farsi language mail is rejected by the prison. He alleges that he is only able to correspond in his native Farsi language by manipulating the prison's "legal mail" system, explaining:

> Federal Defenders Atty John Palombi . . . [tried] several times to resolve rejection of Farsi language mails sent me legal envelops; I gave to Holman Mail Clerk to forward my Farsi language mails as Holman "security violation" mail clerk constantly rejected. Hence Holman Mail Clerk forwarded my Farsi Language mail to Federal Defenders Atty John Palombi with my stamps to forward to my atty. Otherwise Destroyed ALL rejected mails without my envelops my stamps. In other words – for Farsi language mails to receive – I must use my stamps & my envelop to forward to my atty to avoid being destroyed my rejected mails at Holman Mail Office. Palombi several times mailed to me my rejected Farsi mail thru LEGAL-mail.

(Doc. 65 at 5). Sharifi seeks monetary relief and injunctive relief - to be able to make international phone calls and receive Farsi mail, to have his "Z-1 single walk" be changed to a "Z-2 group walk," and for criminal charges to be brought against Warden Raybon. (*Id.* at 7).

Defendant Warden Terry Raybon asserts that he is entitled to qualified immunity and has moved for summary judgment on the claims asserted against him. (Doc. 75). In support of his motion, Warden Raybon has presented copies of Alabama Department of Corrections (ADOC) Administrative Regulation 431: Inmate Telephone System (Doc. 75-1), Holman Standard Operating Procedure 13-004: Inmate Mail (SOP 13-004) (Doc. 754), the affidavit of ADOC Deputy Commissioner of Men's Services Operations Dr. Wendy Williams (Doc. 75-2), and Warden Raybon's personal affidavit (Doc. 75-3). Sharifi objects to summary judgment but has not disputed the evidence and testimony put forth by Warden Raybon and furthermore has not presented any new facts, evidence, or allegations. (Doc. 77).

Accordingly, this motion is ripe for consideration.

## II. Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'") (emphasis omitted).

Defendant, as the party seeking summary judgment, bears "the initial responsibility of informing the district court of the basis for [his] motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clarke v. Coats Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If Plaintiff, the nonmoving party, fails to make "a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," Defendant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. In assessing whether Plaintiff has met his burden, "the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. . . . Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-99 (11th Cir. 1992). The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to material facts." *Garczynski*, 573 F.3d at 1165

(citation and internal quotation marks omitted). "A 'mere scintilla' of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment." *Id*. In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Discussion and Analysis

It is well established that a prisoner retains First Amendment rights that are not "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). This includes the right to communicate with persons outside the prison walls, in his native language. *Kikumura v. Turner*, 28 F.3d 592, 596 (7th Cir. 1994). But this right is limited. *Prison Legal News v. Sec'y, Fla. Dep't of Corr.*, 890 F.3d 954, 965 (11th Cir. 2018). Prison regulations that serve legitimate governmental interests may limit such a right. *Procunier v. Martinez*, 416 U.S. 396, 412–13 (1974). Accordingly, to succeed on his claim, Sharifi must show that there is no valid, rational connection between the prison regulation and the legitimate governmental interest put forward by the defendant. *See Turner v. Safley*, 482 U.S. 78, 89 (1987) (A ban on an inmate's ability to communicate with others "is valid if it is reasonably related to legitimate penological interests."). Importantly, "[courts] do not inquire whether the prison could make an individualized exception for the complaining

inmate—[they] assess 'only the relationship between the asserted penological interests and the prison regulation.'" *Rodriguez v. Burnside*, 38 F.4th 1324, 1330 (11th Cir. 2022), *cert. denied,* 143 S. Ct. 1780 (2023) (quoting *Shaw v. Murphy*, 532 U.S. 223, 230 (2001)). That determination depends on the evaluation of four factors set out by the Supreme Court in *Turner*: (1) whether the regulation bears a rational connection to the legitimate governmental interest put forth to justify it; (2) whether there are available other alternative means of exercising the asserted rights; (3) the impact of accommodating the asserted right on the interest of inmates, prison personnel, and prison resources generally; and (4) whether there is an absence of ready alternatives. 482 U.S. at 89-90.

### A. Sharifi's inability to make international telephone calls at the time he desires is not a First Amendment violation.

The record before the Court belies Sharifi's claim that the prison inmate phone system does not allow for international calls. Administrative Regulation 431 reflects that the telephone system for death row inmates operates from approximately 8:00 a.m. until 12:00 a.m. (Doc. 75-1 at 2). This is affirmed by the ADOC Deputy Commissioner of Men's Services Operations, Dr. Wendy Williams (Doc. 75-2 at 1) and Warden Raybon (Doc. 753 at 1). Warden Raybon also affirms that the inmates are permitted to make international calls on the inmate telephone system. (Doc. 75-3 at 1). And Sharifi has not disputed these facts in any responsive pleading. To the extent that Sharifi is denied making phone calls outside of this window or during hours he finds more compatible with Alabama and Iran's 9.5-hour time difference, there is no constitutional violation.

The record reflects that the inmate phone system is restricted at night due to security concerns. Dr. Williams affirms that inmates are on lockdown during the nighttime

hours. (Doc. 75-2 at 1). The limited movement of inmates prevents "violence from other inmates, inmate escapes, and the introduction of contraband." (*Id*.). According to Dr. Williams, "staffing levels [of the prison] are generally lower during nighttime hours. Because of lower staffing levels, operating inmate telephone system and supervising inmates' use of it diverts correctional staff away from other areas of the facility that need nighttime supervision." (*Id*. at 2).

Accordingly, the restriction imposed on the inmate telephone system which constrains Sharifi from making calls to Iran during the hours he prefers bears a rational connection to a legitimate governmental interest – prison security. Thus, factor one of the *Turner* test is satisfied. Turning to the second factor, Sharifi has approximately 16 hours a day he may use to make an international call. Furthermore, he may communicate with family, friends, and the Iranian government by mail. Despite his claim that his Farsi mail is denied by the prison, Sharifi has made no assertion in any pleading that his family and friends cannot speak, read, or write in English, nor that they have no means to translate a letter from English to another language more readily accessible to the intended recipient. Furthermore, it seems illogical to argue in 2024 that Iranian government officials cannot communicate in the English language or that they do not have access to translators or translating devices. The third factor is satisfied by Dr. Williams's explanation that diverting staff to supervise inmates making phone calls during the night hours of 12:00 a.m. to 8:00 a.m. would impact other inmates and staff, compromising the safety and security of the prison. As to the fourth factor, there is no readily available alternative to meet Sharifi's demand that would not involve extra manpower and raise security concerns by giving Sharifi access to make telephone calls after midnight.

Accordingly, the record before the Court reveals that Sharifi's First Amendment right to communicate by telephone with family, friends, and government officials in Iran has not been violated, as the prison regulation satisfies all the *Turner* factors.

**B. Sharifi's denial of Farsi language mail is not a First Amendment violation.**

Sharifi also alleges Warden Raybon "rejected ALL [his] FARSI Language Letter from Iranian officials & [his] mother & Son in Tehran Iran." (Doc. 6 at 9). Though Sharifi fails to provide any details to his claim, like the dates from which his mail was restricted, how many letters have been rejected, or the content of the rejected letters, the Court takes as true (for purposes of this motion) his claim that he is not allowed to send or receive letters written in the Farsi language. However, weighing of the *Turner* factors reveals no constitutional violation to Sharifi's First Amendment rights.

The record before the Court reflects that there is no policy in place at Holman that specifically targets foreign language mail. Instead, SOP 13-004 provides that "inmates shall be permitted to send and receive correspondence unless it can be determined that such correspondence may present a threat to the safety and security of the public, staff, inmates, and facility." (Doc. 75-4 at 3). This section further provides "[t]here is no limit on . . . the language, content, or source of mail except when there is reasonable belief that limitation is necessary to protect the public safety or maintain institutional order." (*Id*.). Accordingly, the mail restrictions in place bear a rational connection to the prison's legitimate security interest and satisfy the first *Turner* factor. As previously discussed, it appears that Sharifi also has alternate means of communicating with his family, friends, and government officials in Iran and in his Farsi language. He can make telephone calls in Farsi from 8:00 a.m. to 12:00 a.m. He can also write letters in English, as discussed

above, and he has not alleged or disputed that his recipients cannot read, write, or understand the English language. Also, Sharifi has not shown or alleged that the recipients have no access to translation services. And evidenced by his extensive filings with the Court, it is undeniable that Sharifi has command of the English language and can write and communicate effectively in English. Thus, the second *Turner* factor is satisfied. The third and fourth *Turner* factors call for evaluating alternatives to the existing restriction. Warden Raybon has stated that because Holman is populated almost entirely by inmates and staff who are not fluent in Farsi, "it is unlikely that Sharifi's Farsi mail can be translated into English without inordinately impacting (1) other inmates' constitutional interests in having their mail delivered reliably and on time, (2) prison personnel's interests in maintaining institutional order without needing to translate Sharifi's mail, and (3) prison resources that are already strained by well-documented staffing shortages." (Doc. 75 at 10). And, Sharifi has presented no ready alternative to the communication restriction. *Cf.*, *Turner*, 482 U.S. at 91 ("But if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.").

In similar cases, courts have found no constitutional violation to an inmate's First Amendment rights where there remains some access to an inmate's ability to communicate with friends and family generally. For instance, in *Ortiz v. Fort Dodge Corr. Facility*, 368 F.3d 1024 (8th Cir. 2004), the court upheld the prison's prohibition on letters to inmate's family members being written in Spanish, finding Ortiz had other avenues by which he could communicate with his family members, namely he was allowed to call

8

them on the phone and to receive them in person. In *Yang v. Missouri Dep't Corrs.*, 833 F.3d 890, 893 (8th Cir. 2016), the court upheld the denial of Yang's Chinese-language mail and the denial of his ability to place telephone calls to China, where it was determined that Yang had an alternate means of communicating with outsiders, as he retained the ability to make calls and send letters in English. The court discussed that Yang's *pro se* pleadings demonstrated he could communicate adequately in English, that Yang testified he believed there was a translation service in the city where his family resides, and Yang failed to show an alternative that would have eased the restriction without imposing financial burdens on the State.

Likewise, because the Sharifi retains adequate alternative means of exercising his right to communicate with Iranian non-prisoners, in Farsi by phone and by letter in English, and he has failed to provide a ready alternative to the mail regulation, the prison regulation and denial of his Farsi mail does not constitute a First Amendment violation. **C. Warden Raybon is entitled to qualified immunity.**

There is no dispute that Warden Raybon was acting within his discretionary authority as Warden of Holman at the times complained of in this action. "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Marbury v. Warden,* 936 F.3d 1227, 1232 (11th Cir. 2019) (citation omitted). Accordingly, the burden shifts to Sharifi to show that Warden Raybon violated a constitutional right and that the right was clearly established at the time of the alleged violation. *Id*. For the reasons

explained above, no constitutional violation has been established. Thus, Warden Raybon is entitled to qualified immunity from this suit.

## IV. Conclusion.

Based on the above reasons, it is **RECOMMENDED** that Summary Judgment be **GRANTED** in favor of Defendant Warden Terry Raybon as to the First Amendment claims against him for denial of international telephone calls to Iran and denial of outgoing and incoming Farsi language mail. It is further **RECOMMENDED** that this action be **DISMISSED** in its entirety.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D.ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify

the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific. **DONE** and **ORDERED** this 6th day of March, 2024.

                                                <u>s/P. Bradley Murray</u>
                                                UNITED STATES MAGISTRATE JUDGE